# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1741 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Nieves vs. Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The motions for summary judgment [55-1], [57-1] brought by defendants Board of Education of the City of Chicago and Sharon Rae Bender are granted. Judgment is entered in favor of defendants. This case is terminated. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | SEP 28 2001 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| TSA courtroom deputy's initials | SEP 28 AM 11: 22 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

Document Number 81

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE NIEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 99 C 1741 |
| | ) |
| BOARD OF EDUCATION of the CITY OF CHICAGO and SHARON RAE BENDER, in her individual capacity, | ) Wayne R. Andersen ) District Court Judge ) ) |
| | ) |
| Defendants. | ) |

DOCKETED
SEP 2 8 2001

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motions for summary judgment brought by defendants Board of Education of the City of Chicago and Sharon Rae Bender pursuant to Federal Rule of Civil Procedure 56. Plaintiff Rose Nieves has alleged that the defendants violated her constitutional right to free speech and that they discharged her in retaliation for exercising her right to free speech. For the following reasons, the motions for summary judgment are granted.

## BACKGROUND

Plaintiff Rose Nieves began working for the Chicago Board of Education in June of 1984 and continued to work there until June of 1998. She began her tenure with the Chicago Public School system as a lunch room attendant, advanced to the position of security monitor and was finally promoted to Security Supervisor II. For a large portion of this time, Nieves was assigned to Schurz High School.

During the relevant time frame in this case, defendant Sharon Rae Bender served as principal of Schurz High School and ultimate supervisor of Nieves. Both parties agree that from 1997 through 1998, Nieves had several verbal disagreements with Bender. Nieves claims she was fired from her position as Security Supervisor II at Schurz in retaliation for those verbal disputes. The first of these incidents occurred in December 1997. According to Nieves, defendant Bender ordered that the Schurz bilingual education classroom remain locked and closed to those bilingual students Nieves felt needed additional language instruction. Bender disputes this allegation and instead claims that she merely ordered that the bilingual classroom be closed and locked when no one was scheduled to use it because it housed expensive equipment.

Nieves complained to assistant principal Barbara Folino that Hispanic students were not receiving sufficient tutoring assistance in the bilingual classroom while Polish students were receiving more language instruction than what she felt was appropriate. The next day, Nieves was called into Bender's office to discuss what she had said to Folino. Nieves alleges that Bender was loud and angry in response to Nieves' complaint that Hispanic students were receiving less bilingual instruction than Polish students. Nieves also alleges that Bender said, "Rose, I want you out of here" and "it's time for you to go." Bender informed the plaintiff that she would arrange for her administrative transfer out of Schurz High School, but plaintiff indicated that she was not willing to accept such a transfer.

Bender admits to meeting with Nieves, but instead asserts that the reason for the meeting was because plaintiff had allegedly used the term "pollack" to describe Polish students. A letter written by Bender commemorating the meeting states that certain individuals had complained to Bender about Nieves making remarks which "may be misconstrued as biased or racist." In the

2

letter, Bender suggested that Nieves seek an administrative transfer because she seemed unhappy and her attitude was causing "disruption and disharmony among the individuals whom [Nieves] supervise[d] in security positions." Further, Bender denies being upset or that she made any of the specific comments which Nieves has attributed to her.

The second incident occurred in March or April of 1998. Nieves noticed that teachers and administrators were involved in a gambling pool at Schurz High School. Nieves reported this activity to a public interest group called Parents United for the Reform of Education ("PURE"). On May 11, 1998, PURE forwarded the information received from Nieves to the Cook County States Attorney's office and Maribeth Vander Weele, head of the investigative office of the Chicago Public Schools. During the investigation conducted by Vander Weele, Bender acknowledged that she was aware that Nieves had complained about alleged gambling activity taking place at Schurz.

Shortly thereafter, Nieves received a letter, dated June 20, 1998, from Bender informing her that her position at Schurz had been closed. In the letter, Bender requested that Nieves contact the Chicago Public Schools' Department of Recruitment and Staffing regarding employment opportunities. On July 24, 1998, Nieves received a second letter from Paul Vallas, who was then serving as Chief Executive Officer of the Chicago Public School System, informing her that she had been "laid off" as a result of a reduction in force. The second letter also informed her that she would automatically be included in the eligibility pool for her job title and that she could visit the Application Intake Center in order to be included on eligibility lists for other job positions commensurate with her experience.

In her complaint, Nieves alleges that she was "laid off" because she complained about the

3

lack of tutoring opportunities for Hispanic students and alleged gambling activity at Schurz High School. Defendants conversely assert Nieves was "laid off" because Schurz needed to make up for a budgetary shortfall. The reason for the shortfall was that Schurz had been placed on academic probation by the Chicago School Board during the 1997-98 school year because of low reading scores. The administration at Schurz High School was informed that it was their responsibility to do whatever was necessary to raise reading competency levels. To make matters worse, in December of 1997, Bender learned that Schurz would be losing state Chapter I funding. In order to deal with this financial situation, Bender decided to close four positions at Schurz that had been funded with Chapter I appropriations, including the position held by the plaintiff.

To justify this personnel action, defendants argue that Security Supervisor II was a job classification, funded with Chapter I resources, that had been all but abandoned by the Chicago School Board. In fact, Nieves was the last individual employed in the entire Chicago Public School system who served in that capacity and under that job classification. Defendants argue that Bender made the decision that the money earmarked for Security Supervisor II would be better spent on a new reading teacher.

Nieves was the only employee of the four whose positions were closed by Bender who was unable to find other employment at Schurz High School. Plaintiff is currently employed by the Chicago Board of Education at Prosser High School.

In Count I of her Complaint, plaintiff alleges a violation of 42 U.S.C. § 1983 because she was dismissed for exercising her First Amendment rights. In Count II of her Complaint, Nieves alleges a state law claim for retaliatory discharge.

4

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. Doe v. R.R. Donnelley & Sons. Co., 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party and should not make credibility determinations or weigh the evidence. Association Milk Producers, Inc. v. Meadow Gold Diaries, Inc., 27 F.3d 268, 270 (7th Cir. 1994). The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. Celotex, 477 U.S. at 324. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. Anderson, 477 U.S. at 252. With these standards in mind, we turn to the

motions before us.

I. **The Board of Education of the City of Chicago**

   A. Section 1983 Liability

The Chicago Board of Education argues that it is entitled to summary judgment because Nieves cannot establish liability under § 1983. Additionally, the Board of Education contends that Nieves did not engage in protected speech and that she was not laid off in retaliation for the various allegations she made to the Schurz administration.

In order to hold a municipality liable under § 1983, a plaintiff must allege that her injury was caused by an official policy, custom, or practice. Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658, 694. 98 S.Ct. 2018 (1978). A policy, custom, or practice can take the form of: (1) an ordinance or written directive; (2) a persistent custom that rises to the level of a de facto policy; or (3) an action taken by an official policymaker. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). The Board of Education argues that Nieves cannot prevail in her § 1983 action because no individual with policymaking authority was aware of Nieves' allegations of discrimination in the bilingual education program or alleged gambling activity at Schurz prior to her layoff. Nieves, on the other hand, argues that the Board of Education delegated its authority to hire and fire to Bender, and, therefore, she qualifies as an official policymaker with regard to Monell liability. Nieves has abandoned her allegation that members of the Board actually knew about the situation surrounding her dismissal.

Under Illinois law, the Chicago Board of Education has full and plenary power to dismiss employees. See 105 ILCS 5/34-85 (West 1998). The Illinois School Code requires that, if a dismissal is for cause, the superintendent file a charge against the employee. Once that is

completed, the individual being dismissed has the right to ask for an administrative hearing. Id. The superintendent then forwards the decision of the hearing officer to the Board, which has final decisionmaking authority on personnel matters. Id. However, the record is clear in this case that Nieves was not dismissed for cause. Instead, Bender decided to close the position of Security Supervisor II and the Board of Education made the ultimate decision to lay her off from that position. As the defendants argue, there is an important distinction between a dismissal for cause, which is equivalent to a person being fired from a position, and a layoff, which allows the individual to pursue similar employment elsewhere in the Chicago Public School system. Therefore, it is necessary at this point to examine the authority delegated to principals under the Illinois School Code to determine if there is any Monell liability associated with Bender's decision to close Nieves' position.

Principals do not have final decisionmaking authority with respect to employment decisions affecting Chicago Public School employees. As the Illinois School Code states, "the right to employ, discharge, and layoff shall be vested solely with the board." 105 ILCS 5/34-8.1 (West 1998). Principals may "make recommendations to the board regarding the employment, discharge, or layoff of any individual." Id. However, the language of the statute is clear that the final decision to discharge a Chicago Public School official lies exclusively with the Board of Education. Courts that have examined the spheres of power of both the Board of Education and individual principals with respect to employment decisions have held that it is not possible to infer, from similar provisions of the Illinois School Code, that either superintendents or principals have policymaking authority to make personnel decisions. See Duda v. Board of Educ. Of Franklin Park Public Sch. Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998); Cornfield

7

v. Consolidated High Sch. Dist. No. 2, 991 F.2d 1054, 1061 (7th Cir. 1998).

Nieves attempts to overcome the direct and irrefutable language of 105 ILCS 5/34-8.1 by arguing that the Chicago Board of Education delegated final decisionmaking authority to Bender because her employment decision regarding Nieves was simply ratified by her superior. Further, Nieves argues that similar personnel decisions made by other Chicago principals are always ratified, and, therefore, principals do have final decisionmaking authority under the Illinois School Code. In support of this contention, Nieves cites to the deposition of Clyde Harris-Randle. Harris-Randle is a recruiter in the Department of Human Resources. Harris-Randle stated in his deposition that he largely served in a ministerial capacity when deciding whether to lay off an individual whose job position had been closed by a principal. Therefore, according to Nieves, Bender exercised final decisionmaking authority sufficient to impute Monell liability on the Chicago Board of Education because her decision to close the Security Supervisor position went largely unreviewed by the Board. We disagree.

Even if undisputed, these allegations are insufficient for the basis of Monell liability. It is uncontested that the Board of Education made the ultimate decision to lay off Nieves from the position of Security Supervisor II as evidenced by the July 24, 1998 letter from Paul Vallas. Therefore, the fact that principal Bender may have had the final say as to whether Nieves' individual position was closed is insufficient as a matter of law to establish the fact that the Board of Education delegated to Bender the authority to set policy with respect to personnel decisions. The final authority to hire and fire, without the ability to set policy, cannot serve as the basis for municipal liability. Venters v. City of Delphi, 123 F.3d 956, 966 (7th Cir. 1997).

Additionally, we would like to briefly address the substance of Nieves' First Amendment

8

claims against the Board of Education. In order to recover on a § 1983 claim for deprivation of an employee's First Amendment right to free speech, a plaintiff must prove that she spoke out on a matter of public concern, that her speech was a substantial factor in her termination, and that the defendant would not have taken the same action in the absence of protected conduct. Mt. Healthy City School Bd. Of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568 (1977). It is clear from the record that there is no genuine issue of material fact as to the third element because the decision to lay off Nieves would have occurred regardless of her allegations of malfeasance at Schurz High School.

A short chronology of events may be instructive to clarify this point. The record is clear that, during the 1997-98 and 1998-99 school years, Schurz High School was on academic probation because of continually deficient reading scores. As a result of being placed on probation, the Schurz administration was faced with the prospect of reduced state Chapter I funding for their school. It was because the school was experiencing this budgetary shortfall that Bender made the initial decision to close four positions, including that held by Nieves, in December of 1997. This was a full month before Nieves first approached members of the Schurz administration in January 1998 to address her concerns about the adequacy of bilingual education opportunities for Hispanic students and at least four months prior to her accusations of gambling activity. Based on this information, it is obvious that the Board's decision to lay off Nieves was not on account of the accusations she leveled against Bender and other Schurz employees, but because of budgetary constraints facing Schurz High School. That being said, we find there is no genuine issue of material fact as to Count I, and we grant summary judgment in favor of the Board of Education of the City of Chicago.

9

B. <u>Retaliatory Discharge</u>

In Count II, Nieves alleges that she was discharged because she spoke out against the allegedly discriminatory treatment of bilingual Hispanic students and alleged illegal gambling taking place at Schurz. The Board of Education counters these contentions by asserting that plaintiff was not discharged for cause, that the discharge was not in retaliation for her allegations, and that the layoff did not violate public policy.

Under Illinois law, in order to establish a cause of action for retaliatory discharge, plaintiff must demonstrate that she was discharged in retaliation for her activities and that the discharge violated a clear mandate of public policy. <u>Hartlein v. Illinois Power Co.</u>, 151 Ill.2d 142, 160 (1992). Retaliatory discharge actions have traditionally been allowed in two situations: (1) when an employee is discharged for seeking workers' compensation benefits and (2) when an employee is discharged for reporting misconduct by the employer. <u>Howard v. Zack Co.</u>, 264 Ill.App.3d 1012, 1022 (1st Dist. 1994). The scope of this cause of action is intended to be narrow. <u>Buckner v. Atlantic Plant Maint., Inc.</u>, 182 Ill.2d 12, 19 (1998). A loss or change in promotion status short of dismissal is insufficient to trigger this cause of action. <u>Zimmerman v. Buchheit of Sparta, Inc.</u>, 164 Ill.2d 29, 38-39 (1994).

As was discussed above, the Board of Education's most compelling argument is that Nieves cannot present any evidence that she was discharged in retaliation for her activities. It is undisputed that her position was closed by Bender. The record also suggests that she was dismissed from her position as part of a legitimate reduction in force. Nieves does dispute whether Bender was motivated not to rehire her for another position at Schurz on the basis of her accusations, but that claim is not currently before the Court. Nieves was notified that she was

10

eligible to be rehired by the Board for another position within the Chicago Public School system. In fact, she has been rehired and currently works at Prosser High School. Even if her new position can be considered a demotion, a claim which she does not make, summary judgment must be granted for the very simple reason that she cannot establish that she was ever discharged. Therefore, she cannot assert this narrow cause of action. Summary judgment is entered in favor the School Board of the City of Chicago as to Count II.

## II. Sharon Rae Bender

Bender has moved for summary judgment on Counts I and II. After the submission of her complaint, Nieves acknowledged that, as to Count II, the only proper defendant in a retaliatory discharge action is the plaintiff's former employer. See Buckner, 182 Ill.2d at 19; Jones v. SABIS Educational Systems, Inc., 52 F. Supp. 2d 868 (N.D. Ill. 1999). As a result, we will enter judgment in favor of Bender on Count II and only analyze Nieves' claims as they relate to Count I.

Bender argues that judgment should be entered on her behalf as to Count I because she is not responsible for the employment action, Nieves did not speak out on a matter of public concern, and her speech was not a substantial factor in her dismissal. See Mt Healthy Bd. of Educ., 429 U.S. at 287. We agree.

We need not address the first two of these arguments because we feel that Nieves' failure to set forth specific facts showing there is a genuine issue of material fact as to the third element of the cause of action is dispositive. Nieves cannot show that, absent her accusations, Bender would not have made the same decision to close the Security Supervisor II position at Schurz. It is undisputed that Schurz was on academic probation during the 1997-98 school year and that the

Schurz administration was forced to make tough budgetary decisions in the face of restricted state funding. It is also quite clear from the record that the position of Security Supervisor II was an obsolete job classification that had been completely abandoned by the Board of Education well before these events took place. Additionally, Nieves has not been able to refute the evidence offered by the defendants that Bender contemplated closing Nieves' position in December 1997 when she made that recommendation to the Schurz budget committee. All of this evidence establishes conclusively that Bender's decision to close plaintiff's position was made well before Nieves made her first accusation of discrimination against Hispanic students. Therefore, Nieves cannot prove that, absent her allegations of wrongdoing, she would not ultimately have been laid off during the reduction in force. Summary judgment is granted in favor of defendant Bender on Counts I and II.

## CONCLUSION

The motions for summary judgment brought by defendants Board of Education of the City of Chicago and Sharon Rae Bender are granted. Judgment is entered in favor of defendants. This case is terminated. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 28, 2001